## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SECURITIES AND EXCHANGE COMMISSION,**
**100 F Street, N.E.**
**Washington, DC 20549-4010,**

**Applicant,**

**v.**

**Misc. No.:**

**TOM SIMEO,**
**2270 2nd Ave.**
**Apt. 3A**
**New York, NY 10035-4876,**

**Respondent.**

## MEMORANDUM OF LAW
## IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE
## AND AN ORDER REQUIRING COMPLIANCE WITH ADMINISTRATIVE
## SUBPOENAS

The Securities and Exchange Commission (the "SEC") respectfully submits this

memorandum in support of its Application, pursuant to Section 21(c) of the Securities Exchange

Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(c), to compel Respondent Tom Simeo ("Simeo") to

comply with two subpoenas, one seeking the production of documents and the other seeking

Simeo's testimony.  Both subpoenas relate to an on-going SEC investigation into possible violations

of the federal securities laws by Viking Energy Group, Inc., f/k/a Viking Investments Group, Inc.

("Viking"), a company for which Simeo occupied most of the senior management posts from at

least 2008 until May of 2017.

## PRELIMINARY STATEMENT

The SEC has commenced an investigation into Viking based on serious allegations made

by Viking's own former audit firm.  That audit firm has strongly suggested that Viking's SEC

filings may contain multiple misrepresentations and omissions.  Simeo appears to have exercised

personal control over Viking for much of the relevant period.  The company's own lawyers have

stated that Simeo is the only possible source for some of the information most relevant to the

SEC's investigation.  In spite of numerous efforts by the SEC to accommodate him, in the end,

Simeo has simply refused to comply with two lawful and necessary subpoenas.  The intervention

of this Court is now appropriate.


## STATEMENT OF FACTS

### I.   The SEC's Investigation

On January 13, 2017, pursuant to Sections 21(a) and 21(b) of the Exchange Act

("Exchange Act"), 15 U.S.C. § 78u(a) and (b), the Commission issued an Order Directing

Private Investigation and Designating Officers to Take Testimony in an investigation entitled "In

the Matter of Viking Investments Group, Inc. HO-13194" (the "Formal Order").  Viking is

incorporated in Nevada, with its principal place of business in New York.  Its common stock is

traded on OTC Markets Group's OTCQB under the symbol "VKIN."

The Formal Order authorizes certain members of the SEC Staff who are identified in the

Formal Order to investigate, among other things, whether certain persons and entities violated

Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  The SEC's investigative

authority pursuant to the Formal Order includes issuing administrative subpoenas requiring the

production of documents and compelling the attendance of witnesses for investigative testimony.

This investigation initially arose from a September 7, 2016 letter submitted by Green &

Company, CPAs ("Green & Co.") to the SEC's Office of Chief Accountant.  Green & Co.

resigned as the independent registered public accounting firm for Viking effective August 31,

2016, which Green & Co. formally confirmed in a letter to Viking, dated September 2, 2016 (the

"Resignation Letter").  As required by SEC rule, Viking submitted a notice letter pursuant to

Section 10A of the Exchange Act (15 U.S.C. § 78j-1) (the "Notice Letter") regarding Green &

Co.'s resignation to the SEC's Office of Chief Accountant on September 6, 2016.  Green & Co.

then submitted a letter, dated September 7, 2016, to the Office of Chief Accountant, attaching its

Resignation Letter and asserting that Viking's Notice Letter failed to include all the facts set

forth in the Resignation Letter.  The Resignation Letter is Exhibit 4 to the Declaration of Laura

D'Allaird submitted herewith (the "D'Allaird Decl.").

 The Resignation Letter alleges that Viking's 2015 annual report on Form 10-K, and its

quarterly reports on Form 10-Q for the quarters ended September 30, 2015, March 31, 2016, and

June 30, 2016 contained material errors and omissions.

## II.  The Company's Subpoena

On February 1, 2017, the SEC issued a Subpoena to Viking for documents related to,

among other things, certain Viking annual reports on Form 10-K and quarterly reports on Form

10-Q.  The SEC sought documents related to certain consultant fees, loans and notes outstanding,

the valuation of Viking's oil and gas properties, as well as documents relating to the resignations

of former Viking Board member, Townsend Tang ("Tang"), and former Viking Board member

and Chief Financial Officer, Guangfang "Cecile" Yang ("Yang") (the "Viking Subpoena")

(D'Allaird Decl. Exhibit 5).  The Viking Subpoena requests directly related to several of the

comments made by Green & Co. in its Resignation Letter.

## III. The Company's Response to Its Subpoena

Viking produced approximately 7,000 documents in response to the Viking Subpoena.  It

made its last production on February 22, 2017.  (D'Allaird Decl. at ¶ K; Exhibit 5).  On February

22, 2017, a staff member of the SEC ("SEC Staff") spoke by telephone with Ross Carmel

("Carmel") who served as Viking's counsel.  During this call, SEC Staff asked Carmel to identify all the custodians from whom Viking had collected documents.  Carmel stated that Viking had not collected documents from Yang and Tang and further stated that both Yang and Tang reside in China, and that neither Yang nor Tang maintained a Viking email address. Carmel also stated that Simeo was the only individual at Viking who had communicated with Yang and Tang, and that he did so through "WeChat," a Chinese social media application.  Carmel further represented that Simeo's laptop computer, on which he used WeChat, was "dead" and, for that reason, Simeo had not provided Viking with his communications with Yang and Tang. (D'Allaird Decl. at ¶¶ L-M; Exhibit 6).

During the February 22, 2017 call with Carmel, SEC Staff asked if Simeo would agree to provide his laptop computer to the SEC's Division of Enforcement IT Forensics Laboratory (the "IT Forensics Lab") so that it could conduct forensic imaging of the device at no cost to Simeo in order to recover any WeChat or other communications with Yang and Tang.  Carmel responded that he would confer with his client.  *Id.*

Carmel emailed SEC Staff on March 3, 2017, again stating that Simeo was the only individual at Viking who communicated with Yang and Tang, that he did so through WeChat, and that Simeo's laptop was "dead."  (D'Allaird Decl. at ¶ O; Exhibit 7).  Carmel added that Simeo advised Carmel that, because neither Yang nor Tang spoke English, Simeo's communications with Yang and Tang involved an intermediary named Elle Zhong, who speaks English and also resides in China.  *Id.*  SEC staff replied to Carmel's email and again offered to have the IT Forensics Lab assist in recovering the communications in question from Simeo's laptop computer.  (D'Allaird Decl. at ¶ P; Exhibit 7).  Carmel then emailed SEC Staff on March 8, 2017, to state that he no longer represented Simeo, and advised that SEC Staff contact Simeo directly regarding any questions about Yang and Tang.  (D'Allaird Decl. at ¶ Q; Exhibit 7).

SEC staff later reviewed Viking's productions in response to the Viking Subpoena, and could find no communications, either directly or involving an intermediary, to or from Yang and Tang.  (D'Allaird Decl. at ¶ R).

IV. **Simeo Has Refused to Comply with his Subpoenas**

A. **The Document Subpoena**

On March 10, 2017, the SEC Staff issued a Subpoena to Simeo for the same documents requested in the Viking Subpoena (the "Document Subpoena") (D'Allaird Decl. Exhibit 8).  The Document Subpoena also requested that Simeo create verified forensic images for certain electronic devices that he had used during the time period identified in the Document Subpoena. *Id*.

On the Document Subpoena return date of March 24, 2017, Sameer Rastogi ("Rastogi") and one of his colleagues called SEC Staff, stated that they had been retained as Simeo's counsel, and requested an extension of the Document Subpoena return date.  (D'Allaird Decl. at ¶ T).  By email to Rastogi and his colleague on that same date, SEC Staff confirmed that the SEC agreed to set a new return date of April 7, 2017 for Simeo to respond to the Document Subpoena. (D'Allaird Decl. at ¶ T; Exhibit 9).

On April 7, 2017, Rastogi produced on Simeo's behalf two documents in response to the Document Subpoena (the "Simeo Production"), but produced no communications, either directly or involving an intermediary, between Simeo and Yang or Tang, through WeChat or otherwise. (D'Allaird Decl. at ¶ U; Exhibit 10).  In his cover letter to the Simeo Production, Rastogi stated that Simeo objected to producing the forensic images on the grounds that the SEC Staff's request was overly broad, unduly burdensome, and beyond the scope of the Formal Order of Investigation in this case.  (D'Allaird Decl. at ¶ V: Exhibit 11).  Rastogi also asserted in the letter

that the SEC Staff's request for forensic images sought documents protected by the attorney-client privilege and the attorney work product privilege.  However, Rastogi further wrote that, "Mr. Simeo is amenable to discussing alternative requests which would not violate such privileges and would satisfy the forgoing requests."  *Id.*

Members of the SEC Staff, including representatives of the IT Forensics Lab, then spoke by phone with Rastogi and one of his colleagues on May 4, 18, 24 and June 2, 2017.  (D'Allaird Decl. at ¶ W; Exhibits 12-13).

During the May 4, 2017 call, SEC Staff informed Rastogi that Simeo's prior counsel had told SEC Staff that Simeo was the only individual at Viking who communicated with Yang and Tang and that he did so through a mobile application called WeChat.  (D'Allaird Decl. at ¶ X). Rastogi stated that it was his understanding that Simeo did use WeChat to communicate with Yang and Tang and informed SEC Staff that Simeo no longer could access the WeChat application on his mobile phone.  *Id.*  During this call, SEC Staff offered to have personnel from the IT Forensics Lab conduct the forensic imaging of Simeo's devices at no cost to him.  *Id.* SEC Staff reminded Rastogi that Simeo's WeChat communications must be preserved and noted that Simeo had previously received and signed a hold notice directing him to preserve electronic data.  *Id.*

From May 18 through June 2, 2017, SEC staff communicated with Rastogi and his colleague numerous times, during which counsel informed SEC Staff that Simeo had provided two laptops and a mobile phone to their firm and was in the process of retaining an outside vendor to procure forensic images of those devices.  (D'Allaird Decl. at ¶ Y).  However, on June 9, 2017, Rastogi sent an email stating that his firm had withdrawn as Simeo's counsel. (D'Allaird Decl. at ¶ Z; Exhibit 15).  Counsel later sent emails to SEC Staff on June 9 and September 14, 2017, confirming that Simeo's electronic devices remained in their possession,

and stating that they would notify SEC Staff if Simeo contacts them and seeks to obtain his

devices.  (D'Allaird Decl. at ¶ AA; Exhibit 16).

SEC Staff sent emails to Simeo on June 16, 23 and August 10, 2017, requesting that

Simeo contact SEC Staff to discuss his compliance with the Document Subpoena.  (D'Allaird

Decl. at ¶ BB; Exhibit 17).  Simeo did not reply to these emails.  *Id*.

**B.  The Testimony Subpoena**

On August 3, 2017, the SEC Staff issued a Subpoena to Simeo directing him to appear at

the SEC's headquarters in Washington, D.C., on September 26, 2017, to provide testimony

relating to the investigation (the "Testimony Subpoena") (D'Allaird Decl. at ¶ CC; Exhibit 18).

A process server personally served the Testimony Subpoena on Simeo on August 8, 2017.

(D'Allaird Decl. at ¶ DD; Exhibit 19).

On August 10, 2017, SEC Staff sent an email to Simeo and noted that he had been served

with the Testimony Subpoena on August 8, 2017.  SEC Staff informed Simeo that, pursuant to

the Testimony Subpoena, he was required to appear for testimony at the SEC's Washington,

D.C. office at 9:30 a.m. on September 26, 2017.  (D'Allaird Decl. Exhibit 17).

On September 11, 2017, SEC Staff spoke with Simeo by telephone.  During this call,

Simeo confirmed that he had been served with the Testimony Subpoena and stated that he would

appear for his testimony on September 26, 2017.  (D'Allaird Decl. Exhibit 17).  However, Simeo

subsequently sent an email to SEC Staff on September 19, 2017, stating that he would not appear

for his testimony on September 26, 2017, "because I have no counsel and I am very concerned to

testify under oath without proper legal advise [sic]."  (D'Allaird Decl. at ¶ FF; Exhibit 20).

Simeo also stated in his email, "I cannot afford to hire new counsel at this point as I have no

income."  *Id*.

SEC Staff replied to Simeo's email on September 20, 2017.  SEC Staff informed Simeo that he had the right to be accompanied, represented and advised by counsel during his testimony, but his claimed inability to retain counsel did not excuse him from his obligation to comply with the subpoena and testify, subject to any valid assertions of privilege.  (D'Allaird Decl. at ¶ GG; Exhibit 20).   Simeo did not reply to this email.

Simeo did not appear for his testimony in Washington, D.C. on September 26, 2017. (D'Allaird Decl. at ¶ HH; Exhibit 21).  On October 12, 2017, SEC Staff emailed Simeo and noted that he had failed to comply with either the Document Subpoena or the Testimony Subpoena.  (D'Allaird Decl. at ¶ II; Exhibit 20).  SEC Staff requested that Simeo contact the SEC Staff no later than October 16, 2017, to discuss his compliance with the Subpoenas.  *Id*. Simeo did not respond to this email.

## ARGUMENT

### I.        Jurisdiction And Venue Are Proper

This Court has jurisdiction to enforce duly issued administrative subpoenas upon application by the SEC.  15 U.S.C. §§ 77v(b) and 78u(c).  Accordingly, this Court may issue an order directing Simeo to comply with the subpoenas.

Venue is proper before this Court because an SEC subpoena enforcement action may be brought in any district court "within the jurisdiction of which such investigation or proceeding is carried on."  15 U.S.C. § 78u(c).  The present investigation is being conducted by Staff located at the SEC's headquarters in Washington, D.C., and the subpoenas were issued and returnable in Washington, D.C.  Therefore, venue for the enforcement of the subpoenas lies in this district.

## II.      The Subpoenas Satisfy All Requirements For Enforcement

To enforce an administrative subpoena, the SEC must satisfy this Court: (i) that the inquiry has a legitimate purpose, (ii) that the subpoena was issued in accordance with the appropriate administrative procedures, and (iii) that the information sought is reasonably relevant to some subject of the inquiry. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). *See also Penfield Co. v. SEC*, 330 U.S. 585 (1947); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978); *SEC v. Blinder, Robinson & Co., Inc.*, 681 F. Supp. 1, 4 (D.D.C. 1987); *SEC v. Gulf Res., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 99,174 (D.D.C. Apr. 15, 1983); *SEC v. Dresser Industries, Inc.*, 453 F. Supp. 573, 557 (D.D.C. 1978), *aff'd*, 628 F.2d 1368 (D.D.C. 1980).  Once these threshold criteria are met, the burden shifts to the opposing party to establish that the subpoena is unreasonable.  *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973).  The burden of showing unreasonableness "is not easily met."  *Id.*  None of these elements are in controversy on this application as Simeo did not – nor could he – contest the subpoenas on grounds that they have no legitimate purpose, that the SEC did not follow proper procedures, or that the subpoenas themselves are unreasonable.

### A.      The SEC's Inquiry Has A Legitimate Purpose

Congress created the SEC as an independent regulatory agency having the primary responsibility to enforce the federal securities laws and thus primary responsibility to protect the integrity of the nation's capital markets.  Toward that end, in Section 21(a) of the Exchange Act (15 U.S.C. § 78u(a)), Congress gave the SEC broad authority to conduct such investigations *as it deems necessary* in order to determine whether any person "has violated, is violating or is about to violate" any provisions of the federal securities laws.  *See* 15 U.S.C. § 78u(a)(emphasis added); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984); *Dresser Industries,* 628 F.2d at 1376-77).  Further, Congress gave the SEC authority to investigate "any facts, conditions, practices or matters"

that, "*in its discretion*," the SEC deems necessary or proper to aid in the enforcement of the federal

securities laws.  15 U.S.C. § 78u(a)(1) (emphasis added).

Courts routinely have recognized that, given this broad statutory authority, "there is virtually

no possibility" that the SEC, in commencing an investigation or issuing a subpoena, is acting *ultra*

*vires*.  *See, e.g.*, *Dresser Industries*, 628 F.2d at 1380 (investigation based on staff conclusion that

company "may have engaged in conduct" in violation of the federal securities laws "falls squarely

within the [SEC]'s explicit investigatory authority"); *Blinder Robinson*, 681 F. Supp. at 4

(acknowledging that "[a]s the SEC is charged with overseeing the securities industry and preventing

fraud in the trading of stocks and bonds, it is well within the scope of its authority to request

information necessary to dispel or confirm suspicions of which they have substantive evidence").

Indeed, as the Supreme Court explained in *United States v. Morton Salt Co.*, 338 U.S.

632 (1950), an agency can investigate upon mere suspicion that the law has been violated,

without a showing of probable cause.  The Court explained that:

> [An agency] has a power of inquisition, if one chooses to call it that,
> which is not derived from the judicial function.  It is more analogous to
> the Grand Jury, which does not depend on a case or controversy for power
> to get evidence but can investigate merely on suspicion that the law is
> being violated, or even just because it wants assurance that it is not.  When
> investigative and accusatory duties are delegated by statute to an
> administrative body, it, too, may take steps to inform itself as to whether
> there is probable violation of the law.

*Id.* at 642-43.  The SEC, thus, is acting within the scope of its statutory authority, even

where its investigation is based on nothing more than official curiosity.  *See, e.g.*, *Arthur Young*,

584 F.2d at 1023-24, n.45 (quoting *Morton Salt*) (recognizing that "even if one were to regard a

request for information . . . as caused by nothing more than official curiosity, nevertheless law-

enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is

consistent with the law and public interest").

Here, on January 13, 2017, pursuant to its authority under Section 21(a) of the Exchange

Act, 15 U.S.C. § 78u(a), the SEC issued a Formal Order that authorizes the Division of

Enforcement to investigate potential violations of the federal securities laws in connection with, among other things, the SEC filings and accounting records of Viking. The SEC Staff, consistent with the Formal Order, seeks details about Simeo's involvement with Viking and any documents, including electronic mail and text messages, to determine whether violations of the federal securities laws have occurred. The SEC's investigation – and the subpoenas issued in connection therewith – are unquestionably within the scope of the Formal Order and the SEC's law enforcement powers.

### B.      All Administrative Requirements Have Been Satisfied

Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), provides that the Commission may, in the course of conducting investigations, designate officers and empower them to subpoena witnesses. The Commission issued a Formal Order in this matter designating certain members of the SEC Staff and empowering them to conduct an investigation into, among other things, the SEC filings and accounting records of Viking. This gives the Staff authority to issue subpoenas as appropriate. Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, investigative subpoenas may be served by several methods, including by any method conveying actual notice. 17 C.F.R. §§ 203.8 and 201.104(b)(3). Here, an SEC Staff attorney, designated in the Formal Order as an officer of the Commission, issued the subpoenas to Simeo and copies of the subpoenas were served by overnight mail (the Document Subpoena) and personal service (the Testimony Subpoena). (D'Allaird Decl. ¶¶ S, DD). Later, an attorney for Simeo contacted the SEC Staff about the Document Subpoena. (D'Allaird Decl. ¶ T). Simeo confirmed by telephone that he had been served with the Testimony Subpoena. (D'Allaird Decl. ¶ E). Simeo's receipt of the subpoenas is not in controversy.

### C.      The Subpoenas Seek Information Relevant To The Investigation

As the D.C. Circuit has recognized, the SEC's subpoena power is "co-extensive" with its investigative power and, thus, a conclusion that a subpoena is too indefinite or seeks irrelevant

information is essentially "foredoomed by [the Circuit's] holding that the scope of the investigation itself is adequately bounded." *Arthur Young*, 584 F.2d at 1025.  That is, "[t]he breadth of an investigation is for the investigators to determine.  The breadth of a subpoena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators." *Id.* at 1031 (quoting K. Davis, *Administrative Law Treatise* § 3.06, at 188-89 (1958)); *see also Blinder Robinson*, 681 F. Supp. at 4 (prima facie evidence that the evidence sought has potential importance in terms of the investigative objectives is sufficient to validate the scope of the request).  The threshold for demonstrating relevance, thus, is low.

There can be no question here that the information sought by the SEC is highly relevant (and, indeed, reasonably tailored) to the SEC's investigation.  The SEC need not show (i) probable cause that a violation has occurred in order to investigate possible violations of the federal securities laws or (ii) likelihood of success in a litigation that it may or may not commence at the conclusion of its investigation.  *See* Point II.A, *supra*.  Indeed, as this Court explained in *In re Grand Jury Proceedings*, 201 F. Supp. 2d 5 (D.D.C. 1999), albeit in the context of a grand jury subpoena, "[w]hether the subpoenas will reveal incriminating evidence is at this stage speculative.  Grand jury investigations, no less than other investigations, will necessarily meet dead-ends.  The point is simply that leads cannot be foreclosed before they are pursued." *Id.* at 11.

Here, the SEC is investigating multiple possible violations of the securities laws, including possible fraud and other violations by Viking and/or current and former officers and directors of Viking in connection with Viking's annual and quarterly report disclosures regarding certain consultant fees, loan defaults, and the valuation of Viking's oil and gas properties, as well as Viking's disclosures regarding its chief financial officer.  Simeo, as Viking's former CEO, Chairman, and Executive Chairman, indisputably has information that would be relevant to the

SEC's investigation.  In addition, Viking's filings identified Yang as the CFO and board member, and Tang as a board member during the relevant period designated in the Document Subpoena.  Viking's counsel has indicated that only Simeo communicated with these two individuals, either directly or involving an intermediary.  But Simeo has refused to comply with two lawful subpoenas seeking documents and testimony on these matters.  The SEC has no choice but to seek the intervention of this Court.

## **CONCLUSION**

For the reasons stated above and in the SEC's Application, the SEC respectfully requests that the Court grant the Application and enter: (i) an Order, in the form submitted, requiring Simeo to show cause why he should not be ordered to produce documents and appear for testimony pursuant to the subpoenas properly issued by the SEC; and (ii) an Order, in the form submitted, requiring obedience to the subpoenas.

Dated: December 4, 2017                     Respectfully submitted,


                                            *s/John D. Worland, Jr.*
                                            John D. Worland, Jr.
                                                    Assistant Chief Litigation Counsel
                                            Antonia Chion
                                                    Associate Director
                                            Yuri B. Zelinsky
                                                    Assistant Director
                                            Laura D'Allaird
                                                    Staff Attorney

                                            Division of Enforcement
                                            Securities and Exchange Commission
                                            100 F Street, N.E.
                                            Washington, DC 20549
                                            (202) 551-4438 (Worland Direct)
                                            worlandj@sec.gov

                                            Attorneys for Applicant